IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

        vs.                                          Case No. 1:16-cr-04567 KWR

JOAQUIN ARCHULETA,

    Defendant.

## ORDER DENYING MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Supervised Release Violations Summary **(Doc. 92)**. Having considered the motion and the relevant law, the Court finds that the motion is not well-taken and therefore is **DENIED**.

The Court ordered Defendant to reside at a residential reentry center for four months, and follow the rules of that facility. Diersen Charities terminated Defendant from the residential reentry center for allegedly failing to follow the facility's rules. Defendant allegedly violated the terms of his supervised release as follows:

- failing to return to facility by his 10:20 p.m. sign in time;
- failing to treat staff with courtesy and respect;
- using profanity;
- viewing or accessing pornography on his smartphone in violation of his agreement with the facility;
- failing to submit to a search when entering the residential reentry center; failing to obey orders by supervising authority;
- failing to follow conditions set forth by his individual reentry plan;

- destroying or disposing of any item during a search or attempt to search;

- being terminated from the residential reentry center.

*See* **Doc. 81.**

Defendant allegedly violated the following special condition of supervised release:

You must reside in a residential reentry center for a term of 4 months. You must follow the rules and regulations of the center.

**Doc. 76 at 6.**

Defendant argues that the Court should dismiss the supervised release violation report because (1) the special condition for his supervised release was vague, or an improper delegation of Article III powers, and (2) the violations are based on his speech or accessing the internet, in violation of his rights under the First Amendment. For the reasons stated below, the Court finds that Defendant's arguments are not well taken.

**BACKGROUND**

On December 7, 2016, a grand jury returned an indictment charging that defendant, a previously convicted felon, possessed a handgun in violation of 18 U.S.C. § 922(g)(1). Defendant pled guilty to this count pursuant to a plea agreement. On October 11, 2017, Defendant was sentenced to a term of 55 months of imprisonment followed by a term of 2 years supervised release.

Defendant began his original term of supervised release on June 11, 2020. Defendant admitted to five violations of supervised release. At the revocation hearing on April 14, 2022, the Court sentenced Defendant to a 6-month term of imprisonment and reinstated the original term of supervised release for the remaining 8 months. The special conditions of supervision included a requirement that Defendant "must reside in a residential reentry center for a term of 4 months" and "must follow the rules and regulations of the center." **Doc. 76.**

On or about September 17, 2022, Defendant was admitted to the Diersen Charities residential reentry program. While residing there, Defendant was given the opportunity to obtain and use a cell phone with the condition that his "use of a cell/smart phone is based upon [his] understanding and agreement" to several rules. *See* Cell/Smart Phone Registration and Rules Acknowledgement. **Doc. 97-1**. As a condition of obtaining and using a cell phone, Defendant acknowledged and agreed: "I understand that I will not search, view, or download pornographic material on my cell/smart phone." **Doc. 97-1, ¶ 16**. Defendant additionally acknowledged that "approval to use and possess a cell/smart phone is based upon my adherence to the rules in this agreement" and that "violations of these rules are grounds for disciplinary action." *Id.* **at 2**.

The Government alleges that after signing this agreement, Defendant used his cell phone to view pornography. During a search of Defendant's cell phone on October 4, 2022, staff discovered a history of searches for pornography on his web browser. **Doc. 81**. Defendant appeared to admit he did so, commenting on his disciplinary report that "I made a mistake by lookin [sic] up porn. It will not happen again." **Doc. 97 at 3,** *citing* **Doc. 97-2**. Defendant was not terminated from the residential reentry program at that time.

On October 2, 2022, Defendant failed to return to Diersen Charites by his specified curfew and was allegedly insolent and disrespectful when contacted by the facility's staff. **Doc. 97-3.**

On October 17, 2022, Defendant was allegedly observed attempting to hide what appeared to be suboxone in his jacket pocket. When confronted by Diersen Charities' staff, Defendant refused to comply with instructions, eluded staff members, and evaded a search. **Doc. 97-4.** This violation resulted in Defendant's expulsion from Diersen Charities.

Following Defendant's dismissal from Diersen Charities, probation filed the pending Petition for Revocation of Supervised Release on October 21, 2022.

**DISCUSSION**

**I.     Defendant's facial challenge is untimely.**

To the extent Defendant facially challenges the Court's special conditions, the Court finds that such challenge is untimely or waived.

The Court issued a special condition ordering Defendant to reside at a residential reentry center and follow the rules of that facility. *See* **Doc. 76 at 6** (Judgment on Revocation of Supervised Release) ("You must reside in a residential reentry center for a term of 4 months. You must follow the rules and regulations of the center."). When that condition was imposed, Defendant did not challenge that condition, or argue that condition was vague, or an improper delegation of Article III powers.

Now, Defendant seeks dismissal of the petition to revoke "to the extent that the Judgment on Supervised Release incorporates unidentified policies or guidelines required by Diersen Charities and are the basis for the alleged violation of supervised release conditions the non-delegation doctrine and Article III of Federal Constitution. [sic]" **Doc. 92 at 1**. In other words, Defendant clearly challenges on its face the Court's special condition that he follow the rules of residential reentry center.

"Courts have consistently said that a defendant cannot challenge the condition [of supervised release] on its face at a revocation hearing." *United States v. Helton*, 612 F. App'x 906, 909 (10th Cir. 2015) ("We are in alignment with other circuits in holding that a supervisee cannot challenge a condition itself when responding to a petition to revoke supervised release."). "The typical way to challenge an improper condition of supervised release is by an appeal." *United States v. Nielsen*, No. 21-8087, 2022 WL 3226309, at *5 (10th Cir. Aug. 10, 2022); *see United States v. Wayne*, 591 F.3d 1326, 1334 (10th Cir. 2010) (The supervisee "should have challenged

the legal and factual basis of the initial supervised release condition on direct appeal from the sentencing court's judgment."); *United States v. Preacely*, 702 F.3d 373, 376 (7th Cir. 2012) ("The primary problem with [the defendant's] argument is that he raises it too late. The time for [him] to challenge the condition was at sentencing or on direct appeal, not at his revocation hearing.").

Here, Defendant apparently did not challenge the condition at the time the supervised release judgment was entered or file an appeal of the supervised release judgment. Therefore, the Court finds that Defendant cannot raise his facial challenge now in this revocation proceeding.

Defendant argues in his reply brief that he is not facially challenging the special condition, but is making an as-applied challenge. The Court disagrees. In his *motion*, he stated that "to the extent that the Judgment on Supervised Release incorporates unidentified policies or guidelines required by Diersen Charities and are the basis for the alleged violation of supervise [sic] release conditions the nondelegation doctrine and Article III of Federal Constitution. [sic]" **Doc. 92 at 1.** That language clearly captures the heart of Defendant's argument – that he does not believe he should be required to follow Diersen Charities' rules, which the Court ordered him to do in its judgment. **Doc. 76 at 6** ("You must reside in a residential reentry center for a term of 4 months. You must follow the rules and regulations of the center."). At the time the judgment was entered, Defendant could have made a vagueness challenge, or argue that the condition improperly delegated Article III powers, but he chose not to.

Alternatively, even if the Court were to address this issue, it would find that an order directing a defendant to comply with the rules and regulations of a third-party custodian does not constitute an impermissible delegation of Article III power. *United States v. Garcia*, 690 F. App'x 575, 587-89 (10th Cir. 2017); *United States v. Sebastian*, 612 F.3d 47, 52 (1st Cir. 2010) ("If the district Court could not mandate compliance with the rules of the treatment program, the required

5

participation would be ineffectual."). The Court is not delegating any Article III power to a third party. The Court will hear and determine whether the alleged violations warrant a revocation of his supervised release.

Therefore, the Court denies Defendant's motion as an impermissible facial challenge to the Court's special condition.

## II. Court declines to dismiss alleged violations related to profanity and viewing pornography on his smartphone.

Alternatively, to the extent Defendant did not make an impermissible facial challenge to the Court's conditions of supervised release, the Court declines to dismiss the petition on Defendant's First Amendment defense.

Initially, the Court did not impose a special condition prohibiting Defendant from accessing pornography, or require that throughout his supervised release he not use profane language or not view pornography. Rather, it imposed a condition that Defendant reside at a residential reentry center, and abide by that facilities' rules. Defendant's residence at the reentry center was terminated, and he allegedly violated the residential reentry center's rules.

In order to receive a smartphone while in custody at the residential reentry center, Defendant signed a form agreeing to the condition that he not use the phone to access or view pornography. Defendant agreed to this term as a condition of his possession and use of a cell phone while at the residential reentry center.

Therefore, at issue is whether a residential reentry facility can require, while a defendant is incarcerated at that institution, not to (1) use profane, explicit, or harassing statements to staff and (2) require that, as a condition to possessing a cellphone, the Defendant not use it to access

6

pornography.  Defendant argues these requirements are vague or violate his rights under the First Amendment.

A court order to reside at a residential reentry center is a form of custody or incarceration. *United States v. Swanson*, 253 F.3d 1220, 1224 (10th Cir. 2001), *citing United States v. Banta,* 127 F.3d 982, 983 (10th Cir.1997) (defendant sentenced to "imprisonment in a halfway house"); *United States v. Elliott,* 971 F.2d 620, 621 (10th Cir.1992) (court ordered "incarceration" in halfway house).

Defendant argues that he has a First Amendment right to use profanity and access pornography while on supervised release.  In support of that argument, he cites to cases which limit the Court's ability to impose a special condition prohibiting a defendant from viewing pornography while on supervised release.  Those case are not on point, as the Court did not issue a special condition prohibiting Defendant from viewing pornography while on supervised release. Rather, at issue is whether Defendant violated the residential reentry center's rules, and the agreement he signed with that facility, as a condition for being granted permission to use a smart phone while residing at the residential reentry center.  In his *motion,* Defendant does not explain or analyze the scope of his First Amendment right while in custody, or in custody at a residential reentry center. The Court did not issue any condition prohibiting Defendant from accessing pornography while on supervised release. Therefore, the Court denies Defendant's motion to dismiss.

Alternatively, only to the extent the Court were required to analyze the First Amendment issues which were not fully raised in the motion, the Court would still deny Defendant's motion.

As noted above, a residential reentry center is a form of incarceration or custody.  *United States v. Swanson*, 253 F.3d 1220, 1224 (10th Cir. 2001).  While in custody, a defendant's liberty

7

is curtailed to some extent. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). "Implicit in the incarceration of a prisoner in a halfway house is that the prisoner will abide by the terms of the halfway house." *Gleave v. Graham*, 954 F. Supp. 599, 612 (W.D.N.Y. 1997). Here, Defendant signed a form granting him permission to possess a cell phone at the residential reentry center *if* he did not use it to view pornography. This prohibition on accessing pornography through his smartphone clearly serves a legitimate penological interest, and is narrow in scope. *Jones v. Salt Lake Cnty.,* 503 F.3d 1147, 1155-56 (10th Cir. 2007). Security and safety are legitimate governmental objections, and this restriction in using a smart phone is rationally related to these objectives. *Id.*

Moreover, generally persons do not have a First Amendment right to harass, be disrespectful, vulgar, explicit, or insolent to staff in a custodial setting. *Turner v. Falk*, 632 F. App'x 457, 460-61 (10th Cir. 2015). Defendant has not cited to any case holding that the Court may not revoke his supervised release for being expelled from a residential reentry center for failure to follow the rules of that custodial facility. Rather, courts have held that breaking "rules of the reentry center" may "warrant the revocation of a supervised release," if a defendant's actions indicate "pervasive unwillingness to comply with court orders and the orders of a reentry center." *United States v. Melton*, 666 F.3d 513, 515-16 (8th Cir. 2012) (internal quotation marks omitted), *cited in United States v. Haag*, 703 F. App'x 448, 449–50 (8th Cir. 2017). Revocation is "within the sound discretion of the district court." *Melton*, 666 F.3d at 517. Here, the petition for revocation of his supervised release was not filed merely for using profane language or viewing pornography. Rather, the allegations plausibly allege a pervasive unwillingness to follow the rules of the reentry center, or plausibly allege that Defendant was harassing or being insolent to staff.

Moreover, the condition which in fact terminated his residence at the facility was his opposition to submitting to a search.  Therefore, the Court denies Defendant's motion to dismiss.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss **(Doc. 92)** is **DENIED.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE